FILED
Apr 15, 2019
02:42 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Thomas Sustersic | ) Docket No. 2017-01-0497 |
| | ) |
| v. | ) |
| | ) State File No. 51589-2017 |
| Lowe's Home Centers, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Audrey A. Headrick, Judge | ) |

---

### Affirmed and Certified as Final – Filed April 15, 2019

---

The employee, an appliance delivery driver, alleged sustaining a hernia when he and a co-worker lifted a cooking range onto the back of a truck. The employer denied the claim, asserting the employee's hernia did not meet the statutory requirements for a compensable hernia. The employee requested an expedited hearing, after which the trial court concluded the employee was unlikely to establish at trial that he suffered a compensable hernia. After additional medical treatment and discovery, the employee was placed at maximum medical improvement and was assigned an impairment rating. Following a trial, the court found the employee had not met his burden of proof of establishing that he suffered a work-related hernia and declined to award benefits. The employee has appealed. Having carefully reviewed the record, we affirm the trial court's decision and certify the trial court's order as final.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Matthew G. Coleman, Cleveland, Tennessee, for the employee-appellant, Thomas Sustersic

Gary S. Napolitan, Chattanooga, and Callie K. Hinson, Nashville, Tennessee, for the employer-appellee, Lowe's Home Centers, Inc.

### Factual and Procedural Background

Thomas Sustersic ("Employee"), a sixty-three-year-old resident of Bradley County, Tennessee, alleged suffering a hernia on April 22, 2017, after he and a co-

employee lifted a cooking range weighing approximately 200 pounds onto a flatbed truck in the course of his employment with Lowe's Home Centers, Inc. ("Employer"). Employee testified he felt immediate stomach pain and experienced a feeling of having to "throw up," but did not do so. He did, however, experience persistent vomiting later that evening. Employee did not immediately seek medical treatment but went to Tennova Hospital approximately twenty-four hours after the lifting incident, complaining of abdominal pain that began the previous day.

Dr. Joshua Worthington, a general surgeon, examined Employee and reviewed the results of a CT scan before diagnosing Employee with a ventral abdominal wall hernia and bowel obstruction. Dr. Worthington noted that Employee reported having abdominal pain for 48 hours accompanied by nausea, vomiting, and diarrhea. In preparation for surgery, Employee had a cardiac consult, and he reported to the cardiologist that his stomach had been getting hard over the past week and that he was experiencing cramps with exertion. Dr. Worthington performed a hernia repair on April 24, 2017, during which he found a second small ventral hernia and a Meckel's diverticulum, which he described as a congenital condition.[1] Dr. Worthington repaired both hernias and resected Employee's bowel to correct the diverticulum, and Employee was released from the hospital two days later.

On May 3, 2017, Employee returned to the hospital, complaining that the surgical wound had been "oozing quite a bit." A CT scan and a physical examination by Dr. Worthington revealed that the initial hernia repair had failed. Dr. Worthington testified that the nature of the failure constituted an emergency requiring Employee "to go back to the operating room right then." Employee returned to Dr. Worthington in the months following the second surgery. A subsequent CT scan "confirmed [Employee] had basically reherniated through [the] second repair." At that point, Dr. Worthington "felt he needed to go see a [hernia] specialist."

Employer denied the claim in its entirety from the outset. As a result, Employee filed a Petition for Benefit Determination. Following unsuccessful mediation, an expedited hearing was conducted during which Employee testified that his stomach had been "very uneasy" and "had been hurting all day" before lifting the range. He described the lifting incident as "the straw that broke the camel's back." Employer submitted an affidavit of Dr. Worthington at the hearing, which stated that Employee "did not provide a history of a specific work injury which caused his abdominal pain." Dr. Worthington's affidavit went on to say that, "based on [his] examination of [Employee], and in [his] medical opinion, it is more likely than not that [Employee's] hernias existed prior to April 2017."

---

[1] Meckel's diverticulum is a congenital bulge in the lower part of the small intestine that is "a leftover" of the umbilical cord. https://my.clevelandclinic.org/health/diseases/14738-meckels-diverticulum (last visited April 12, 2019).

In its expedited hearing order, the trial court determined that Employee was not entitled to the requested workers' compensation benefits, concluding he had not established four of the five statutory criteria necessary to prove a compensable hernia as contemplated by Tennessee Code Annotated section 50-6-212. While the court found Employee had established he suffered pain as a result of the hernia, it determined he had not established that there was an accident resulting in a hernia, that the hernia appeared suddenly, that the hernia immediately followed the accident, and that the hernia did not exist prior to the work accident. That order was not appealed.

Employee subsequently sought treatment with Dr. Vicente Mejia, who ultimately performed a successful hernia repair on January 23, 2018. Employee testified he felt "fine" after the most recent repair, and Dr. Mejia placed him at maximum medical improvement on March 5, 2018, with a 3% anatomic impairment. Employee has not returned to work since the lifting incident, and Employer has not provided any medical or temporary disability benefits to Employee.

Following a second unsuccessful mediation, the case was tried, and Employee was the only witness to testify in person. Employee had testified in the expedited hearing that his stomach felt "very uneasy" and hurt all day on the day of the alleged incident. He further testified that his stomach pains were "slowly building up" over the "last week, several days," "to the point that [he] asked [a manager] if she could have a guy come out there with a forklift to put [the range] on the back of the truck." When specifically asked if he told his cardiologist that "over the past week or so that [his] stomach was getting hard when [he] exerted [himself]," Employee responded in the affirmative, describing the lifting incident as "the straw that broke the camel's back."

At trial, however, Employee testified that the symptoms he experienced after lifting the stove were "different" than what he had previously felt, as they were "more painful" and "sudden." When questioned further as to whether he had ever experienced that type of pain before the lifting incident, Employee responded, "[n]o, [he] had not." When specifically asked on cross-examination to corroborate his previous statement made to the cardiologist concerning the symptoms he experienced prior to the lifting incident, Employee stated he did not recall making that statement.

Dr. Worthington testified by deposition. He was questioned extensively regarding whether Employee's hernia could have been caused by his work activities. Dr. Worthington indicated that a hernia such as that suffered by Employee could have many causes, some of which would be work-related and some of which would not. He stated:

> The hernia, whether it was there two days before or a week before or a year before, I don't know. . . . Whether that hernia was acute or not[,] I don't know. But certainly the thing that was the driving force of him coming in

3

with the nausea, vomiting, and continued abdominal pain was because the bowel was stuck in [the hernia].

On cross-examination, Dr. Worthington was asked the following question about the history in the cardiologist's report and the cause of Employee's hernia: "[b]ased on that history of [the] stomach getting hard and having stomach cramps over the last week or so, you cannot say with any degree of medical certainty that the lifting incident of April 22nd, 2017, was the cause of [Employee's] hernia?" Dr. Worthington responded that he "cannot say one way or the other, no." As to whether Employee's hernia pre-existed the lifting incident, Dr. Worthington stated "there's a chance [it] could have but there's a chance [it] might not. . . . And [Employee] at that time . . . [did not] indicate to me . . . lifting something, feeling a pop or something like that. It just sort of started."

Although Dr. Worthington had signed an affidavit indicating that Employee's hernia pre-existed the work incident, he explained in his deposition that he intended to indicate that Employee's hernia pre-existed his evaluation and treatment of Employee. When presented with a hypothetical scenario mirroring Employee's history and asked whether the hernia was work-related, the following colloquy occurred:

A. I would say that the hernia appeared symptomatic suddenly. In other words, if he had bowel stuck into this hernia and he was asymptomatic before, I think the acute event, whether the hernia appeared out of nowhere, certainly I think the bowel that was stuck in the hernia happened acutely. And that might have happened due to just the pressure on the area. It could've been due to maybe there was a slight widening of the hernia defect acutely. It's hard to really say, but certainly one or the other or both could've definitely happened.

Q. Okay. Without that prior treatment [of the hernia], there's no way to tell that it had –

A. No.

Q. – pre-existed that event.

A. No.

Dr. Worthington testified that Employee's symptoms "developed suddenly" and that he had "acute symptoms," clarifying that "[t]he symptoms that [he] elicited from [Employee] being the nausea and vomiting, as well as the abdominal pain, [were] for the 24 to 48 hours [prior to Employee's visit to the hospital]." Also, he agreed that it was "very likely" that Employee began to experience those symptoms during that timeframe, that those symptoms were "the result of [Employee's] exertion," and that the "[s]tomach

4

cramping and stuff like that that was going on for . . . a week or several weeks beforehand, . . . may or may not have happened."

At trial, Employee testified that, while he had indicated to the cardiologist that he had been experiencing some stomach discomfort and hardness, he believed those symptoms to be flu-related. This testimony was in apparent contradiction to Employee's testimony at the expedited hearing that the lifting incident was the "straw that broke the camel's back" and that he had an "uneasy" stomach that day. At trial, Employee further described the pain following the lifting incident as different, sudden, and severe.

The trial court concluded Employee failed to establish by a preponderance of the evidence that his hernia arose primarily out of and in the course and scope of his employment. Specifically, the court determined that neither the medical evidence nor Dr. Worthington's opinion on causation was sufficient to support a finding of a compensable injury, having failed to satisfy four of the five criteria required by section 50-6-212(a) for hernia claims.[2] Employee has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

Employee raises three issues on appeal, the first two of which we combine and restate as whether the trial court erred in determining that Employee did not present

---

[2] The trial court also made alternative findings in the event its determination regarding compensability was reversed on appeal.

sufficient evidence to establish he suffered a compensable hernia. Employee's third issue is whether the trial court erred in its alternative findings by concluding, in the event Employee's hernia is deemed compensable, Employee is not entitled to temporary disability benefits. Because we affirm the trial court's conclusion that Employee's hernia is not compensable, Employee's third issue is pretermitted.

Unlike other types of injuries, hernias are governed by a specific statute applicable only to hernias, which identifies what an injured worker must prove to establish a compensable, work-related hernia:

> In all claims for compensation for hernia or rupture, resulting from injury by accident arising primarily out of and in the course and scope of the employee's employment, it must be definitely proven to the satisfaction of the court that:
>
> (1) There was an injury resulting in hernia or rupture;
> (2) The hernia or rupture appeared suddenly;
> (3) It was accompanied by pain;
> (4) The hernia or rupture immediately followed the accident; and
> (5) The hernia or rupture did not exist prior to the accident for which compensation is claimed.

Tenn. Code Ann. § 50-6-212(a) (2018).

This statute differs only slightly from the original statute, which was enacted in 1941. As originally enacted, the statute required the five criteria to be "definitely proven" to the satisfaction of the court in all claims "resulting from injury by accident arising out of and in the course of the employee's employment." Public Acts 1941, Ch. 90, § 10. By contrast, the statute applicable in this case requires the five criteria be "definitely proven" to the satisfaction of the court in all claims "resulting from injury by accident arising *primarily* out of and in the course *and scope* of the employee's employment." Tenn. Code Ann. § 50-6-212(a) (2018) (emphasis added).[3]

The first reported Tennessee Supreme Court opinion addressing the 1941 statute is instructive. In *Matthews v. Hardaway Contracting Co.*, 163 S.W.2d 59 (Tenn. 1942), the Tennessee Supreme Court addressed the reasons for the passage of this statute and the difficulty presented in determining when a hernia is caused by an injury, stating:

---

[3] By emphasizing "and scope," we do not suggest the phrase alters the manner in which a workers' compensation case is to be analyzed; rather, it represents language that was not present until added by the Reform Act of 2013. *See Navyac v. Universal Health Servs.*, No. 2015-06-0677, 2016 TN Wrk. Comp. App. Bd. LEXIS 17, at *11-14 (Tenn. Workers' Comp. App. Bd. Mar. 31, 2016).

[The statute] relates solely and alone to an injury arising out of and in the course of employment which results in producing a hernia. It is a matter of common knowledge to men engaged in the science of medicine and surgery, of which we may take judicial cognizance, that a hernia or rupture may result from many causes wholly independent of any traumatic or compensable injury. It is often due to congenital weakness of the abdominal wall and various diseases. Under such circumstances the hernia or rupture might follow any slight exertion, such as coughing or sneezing. It might appear when the workman is engaged in his daily task and not be due to any strain or physical act which could be even thought of as an injury. The question of when a hernia is caused by an injury, or merely results from some inherent physical weakness or disease, is one that is difficult of solution by the courts. Unless it results from some form of trauma arising out of and in the course of the workman's employment, he is not entitled to compensation. The difficulties in finding the truth in such a situation have given rise to the enactment of statutes in several States similar to our own statute (Chapter 90, Acts of 1941). We think it was the object and purpose of our own Legislature, as well as the legislatures of other States, to remove the issue as far as possible from the field of conjecture and speculation.

*Id.* at 60.

Further, the Supreme Court stated in *Matthews* that "[t]he Tennessee Act expressly provides in subsection 5 that it must be definitely proven 'that the hernia or rupture did not exist prior to the accident for which compensation is claimed.'" *Id.* at 62. Finally, the Court expressed its opinion that, by enacting the 1941 statute, the Legislature intended to limit the recovery of benefits for hernias:

We think the Legislature clearly intended to place certain limitations and restrictions upon the right to recover compensation for injuries causing a hernia and also to the aggravation or enlargement of a pre-existing hernia. The statute undertakes to point out and distinguish the injuries that are compensable and those that are non-compensable, and for the injured employee to recover he must bring his case within the provisions of the [statute].

*Id.*

An injured worker has the burden of proof on every essential element of his or her claim. Tenn. Code Ann. § 50-6-239(c)(6) (2018). Likewise, the burden rests on the employee to "definitely" prove to the satisfaction of the court each of the five criteria identified in section 50-6-212(a).

7

Employee asserts on appeal that the trial court erred in concluding he did not suffer a compensable hernia. Employee first argues the trial court erred in its method of analyzing the statutory criteria necessary to establish a compensable hernia. He argues that, when determining whether the first criterion was met, whether there "was an injury resulting in hernia or rupture," the court erroneously included the requirement that the hernia must have resulted "from injury by accident arising primarily out of and in the course and scope of the employee's employment." Employee argues this "effectively defeats the entire purpose of the five step analysis and renders addressing the other four steps irrelevant." Employee contends that "[w]hat the Court did, is address the first step and then demand that it alone establish that the injury was work related." We disagree with Employee's interpretation of the trial court's analysis of section 50-6-212. For an employee to recover benefits for a hernia or rupture, section 50-6-212 specifically contemplates that the employee must prove an injury by accident arising primarily out of and in the course and scope of the employment *and* must "definitely" prove to the satisfaction of the court each of the five criteria set out in the statute.

Here, there is no dispute that Employee experienced symptoms following the April 22, 2017 lifting incident, and there is no dispute that Employee suffered ventral hernias. The parties agreed that three surgeries were required to repair the hernias. However, we agree with the trial court's conclusion that the medical proof failed to establish that the hernia did not exist prior to the April 22, 2017 lifting incident. Although Dr. Worthington testified the hernia *could have* developed as a result of Employee's work activities on April 22, 2017, he also testified the hernia could have been present prior to that date.

When faced with a hypothetical scenario mirroring the facts surrounding Employee's work and the lifting incident and asked whether Employee's hernia appeared suddenly, Dr. Worthington testified that "the hernia appeared symptomatic suddenly." He testified that "if [Employee] had bowel stuck into this hernia and he was asymptomatic before, I think the acute event, whether the hernia appeared out of nowhere, certainly I think the bowel that was stuck in the hernia happened acutely." However, he said "that might have happened due to just pressure on this area. It could've been due to maybe there was a slight widening of the hernia defect acutely. It's hard to really say, but certainly one or the other or both could've definitely happened."

In his deposition, Dr. Worthington was questioned at length by Employee's attorney concerning the signs and symptoms of someone dealing with a hernia. However, Dr. Worthington's testimony did not establish that the lifting incident resulted in the hernia or that the hernia did not exist prior to the lifting incident. Dr. Worthington acknowledged that an individual with a weakened abdominal wall may be more susceptible to suffering a hernia, and he testified that the symptoms Employee exhibited subsequent to the incident were consistent with someone who experienced an acute

8

hernia. But he did not testify that it is more likely than not that the hernia did not exist prior to the lifting incident, nor did he testify to any opinions to that effect.

On cross-examination, Dr. Worthington initially testified, consistent with an affidavit he signed, that it was his opinion "it was more likely than not the [Employee's hernia] existed prior to [the April 2017 lifting incident]." He testified there was no mention in either his records or in the record of a cardiologist's pre-surgery consultation of Employee having lifted a range at work. He acknowledged the report of the cardiologist's consultation indicated Employee reported "over the past week or so" he "felt that his stomach was getting hard and whenever he would exert himself, he would have stomach cramps." Based upon that history, Dr. Worthington was asked whether he could say "with any degree of medical certainty that the lifting incident of April 22nd, 2017, was the cause of [Employee's] hernia," and he responded, "I cannot say one way or the other." Asked specifically about Employee's acute symptoms and whether the symptoms indicated Employee's hernias existed prior to April 2017, Dr. Worthington stated, "I can't say one way or the other when the hernia was formed." Asked whether he could say Employee's hernia "was a result of lifting a range on April 22, 2017, Dr. Worthington responded, "I cannot say that specifically, no."

In his re-direct testimony, Dr. Worthington was asked about his affidavit and whether he "was comfortable with the language . . . that it is more likely than not that the hernia existed prior to April 2017." Although expressing discomfort with the language, he again concluded he did not know when the hernia came into existence:

> I would say at the time [I signed the affidavit] my intent was I mean that I was basically saying I don't know. I know nothing of him prior to when I saw him and the history he gave me about the 48 hours leading up to the event. As far as whether the hernia existed before or after that time, I would say there was likelihood that the hernia existed sometime before I saw him obviously. And as far as that was before the month of April when I saw him, I said it could be but really I don't know.

Although Dr. Worthington testified it was "very likely" the symptoms Employee experienced in the 24 to 48 hours before he saw Employee resulted from the lifting incident, he never testified that the lifting incident resulted in the hernia and never testified that the hernia did not exist prior to the lifting incident. It is clear from Dr. Worthington's testimony that he held the opinion the symptoms Employee described to both the hospital and him resulted from the lifting incident. However, he never testified that the *hernia itself* resulted from the lifting incident. What he did clearly express was that he could not say "one way or the other" and that to do so would be "speculation."

Moreover, in reaching its decision, the trial court considered the testimony given by Employee at the expedited hearing and at trial and concluded that Employee's

9

"attempt to modify his testimony at the compensation hearing [was] unpersuasive." Employee testified at the expedited hearing that he had experienced stomach pains in the week prior to the lifting incident and that the lifting incident on April 22, 2017 was the "straw that broke the camel's back." However, at trial, he testified he thought those symptoms were possibly related to the flu and that his symptoms after lifting the range were different, sudden, and severe.

When the trial judge has seen and heard the witnesses, we give considerable deference to the court's credibility and factual determinations. *See Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). In addition, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2018).

Considering the totality of the circumstances, and taking into account its assessment of Employee's credibility, the trial court concluded Employee had not established the hernia resulted from an injury arising primarily out of and occurring in the course and scope of the employment. While acknowledging Employee experienced pain and other symptoms associated with his hernia and, therefore, satisfied the third criterion of section 50-6-212(a), the court found Employee failed to establish that his hernia resulted from lifting the range on April 22, precluding a finding that there was an injury resulting in the hernia and that the hernia did not exist prior to the accident.

After a thorough and careful review of the record, we cannot conclude that the evidence preponderates against the trial court's findings. Accordingly, we affirm the trial court's conclusion that Employee did not establish the statutory factors necessary to prove a compensable hernia.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court and certify the trial court's order as final.



| | |
|---|---|
| Thomas Sustersic ) | Docket No. 2017-01-0497 |
| ) | |
| v. ) | State File No. 51589-2017 |
| ) | |
| Lowe's Home Centers, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Audrey A. Headrick, Judge ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 15th day of April, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Matthew G. Coleman | | | | | X | mcoleman@loganthompsonlaw.com |
| Gary Napolitan<br>Ben Reese<br>Rob Carden | | | | | X | gary.napolitan@leitnerfirm.com<br>ben.reese@leitnerfirm.com<br>rob.carden@leitnerfirm.com |
| Audrey A. Headrick, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

*Jeanette Baird*

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov